and Mr. Saltzman. Thank you, Your Honor. May it please the Court. This Court should reverse the decision of the Court of Federal Claims and reform Mr. Ehrman's contract because an executive agency cannot legally contract in contravention of the express intent of Congress, either by choosing not to incorporate a directly applicable statute governing the manner of contracting into the contract or pursuant to regulations that contravene congressional intent. Here we have an agency that deliberately reduced the payments to contractors provided for by the statute in order to allow more producers to participate in the CSP program. I ask you just about the process here. Why isn't it proper to dismiss your breach of contract claim and require that you bring a reformation claim, if that's really what you're saying? Well, I believe that we did bring a reformation claim below and it was stated in the Court of Federal Claims proceedings. And as Williston states in Section 70 at 60, it is entirely proper to bring both a reformation and a breach of contract claim in the same action. And what happened to the reformation claim? Well, first it would be the reformation much as occurred in the Beta Systems case and others, the surplus ship cases, that with the reformation and then the decision, which is almost pro forma, that the agency did not follow the reformed contract. So it does make sense to bring of them jointly. And there is precedent for it, Your Honor. Is it your view that the government, is your theory that the government didn't have authority to contract these provisions because they violated the statute? Yes, Your Honor. The regulations are invalid because they did not follow the provisions of the statute. Wait, the regulations are invalid? The regulations are invalid. I thought, but your claim is that the contract was breached. That's right. This isn't a claim for... The contract incorporated the regulations and that set the payment terms. And those were invalid because the regulations were invalid. And why, therefore, if you are correct, that isn't the result that the contract is just void? No. As I said, in cases like Beta Systems and Labarge, they said that in those instances where there is an issue, it is entirely appropriate to reform the contract and incorporate the appropriate provisions generated by the statute into the contract. But if the regulation is contrary to the statute, then the regulation is more than invalid. It's null and void at an issue. That's true, Your Honor. So you're asking us to enforce an illegality? No, I don't want you to enforce an illegality. To the contrary, I want you to excise the illegality and insert the appropriate clause through reformation, the correct payment terms as required by Congress. After all, the intent of Congress has set forth in the statute and its legislative history is what must govern here. But it would seem to me that the real problem is that the appendix to the contract itself seems to contemplate that there could be a statutory change that could affect the entire relationship. It does indicate that, Your Honor. But there was no... How do you get around that? There was no statutory change with regard to the payment terms whatsoever. Now, with regard to the right of renewal, yes, there was a statutory change in 2008. That's the problem, isn't it, Jan? That's your argument. That's right. We believe, Your Honor, that the statute, because it required that the right of renewal to be in the Congress came along and removed the right of renewal. That matter needs to be remanded to the Court of Federal Claims to decide whether or not the government actually breached the reformed contract. So we're not asking this Court to decide that ultimate question. I think that needs to be tried. It was not briefed by the parties below. I don't understand. I mean, if the contract is clear that any change in the statute in the interim would make the change in the contract language as clear... It is not clear, Your Honor. It is not clear. It was not decided by the Court below. It was not raised in the Court below. That matter, the Court below decided that the right of renewal never was in the contract. We believe that is erroneous. Once that error is corrected, then the question comes, did in fact the United States, did Congress, breach the contract by removing it in 2008? And that needs to go to trial. It seems to me that this is not the usual kind of contract provision. It says, in the event the statute is enacted, and which certainly plants the seed that there was even then consideration being given that it might have to be changed, or for whatever reason, that the foundation, including the right of renewal... It does, Your Honor. ...changed, and so that's actually made part of the contract that everyone has. That was drafted by the agency, yes. There was no legislative history at the time to indicate that the right of renewal, there was any contemplation that the right of renewal would be removed. And I think this matter, on the matter on the right of renewal, needs to go back for trial to determine whether or not there was a breach. The right of renewal was amended, but still the producers, or the farmer in this case, still had the option to terminate the contract or continue. So there's still an option there. They didn't have an option to continue because Congress in 2008 removed that, and so they were never presented... I'm not talking about renewal. I'm talking about just to continue the contract. Oh, to continue, yes. Or to terminate it. Yes, but this was a contract where Mr. Ehrman and others were being paid by the government to do certain conservation practices. It inherited to the benefit of both parties to continue the contract, and Mr. Ehrman continued the contract until it terminated in 2014. I'm still a little unclear. In 2008, Congress enacted a provision that said, that prohibited producers from entering any new contract. That's correct. You referenced the, we don't know the legislative history. I mean, the statutory provision seems clear. And in the contract, they have provisions saying that there's a subsequent intervening action by Congress that does such a thing, then there's no renewal. Why isn't that answer clear? I don't think that that provision that Your Honor is referring to is as clear. The provision in the contract or provision in the statute? Provision in the contract that says that when there is a change in the law, it doesn't say that the contract will terminate when there is a change in the law. It says that parties may enter into some additional agreement. Whether that is in effect a termination or a termination for convenience clause, as I said, needs to be ventilated before a trial court. Well, what it says is, Section 10 says the CCC may terminate this contract in whole or in part without liability if they determine that continued operation will result in a violation of a federal statute or regulation, or if termination decides to be in the public interest. That's true, Your Honor. Back to the initial claim. If we were to conclude that we just disagree with you in terms of your reading of the statute and what the government is required to do, and therefore conclude that the regulation was proper, that ends the matter, right? It does. I mean, it's got no claim. It does. Because the contract terms were based on the regulation with regard to the payment terms. And as Your Honor knows, we vehemently disagree with that premise. We believe that the payment terms were at tremendous odds with what the statute required, and with the legislative history. The base payment alone was supposed to be set based on the statute and the legislative history at the 2001 rental rate. And then, with regard to Mr. Ehrman, who was a Tier 2 contractor, he should have received 10% of that per acre for the various land uses, such as cropland. As such, he should have received $7.10 per acre for his cropland. And due to the machinations that the agency did, both in setting base payment too low, and then creating three reduced base payments, he only received $1.60. That difference came about solely because the agency chose to deliberately not follow the statute. And the reason they did that was simply that they wanted to put more contractors into the program under the funding constraints they were under. Your complaint is not whether the government had authority to reduce the regulatory reduction factors, to reduce or recalculate the rental payments. Your complaint is the amount that they arrive at. Well, I think it's one and the same, Your Honor. No. You know, one can be said that the government has no authority to do anything here, and the other is the government has the authority to engage in reduction or recalculation of the base rates, but yet it did it the wrong way. Well, they set the base rates improperly. They were improperly low because the legislative history said it will be, the rock bottom is the 2001 rental rates. In the absence of the legislative history, there would not be an issue, because the statute is quite clear that it's the authority. The legislative history is certainly critical, but as Your Honor knows, under the Chevron deference rules, that as established by this Court, in cases like Milwaukee, 18 Fed Third 921, if memory serves me, that once you look at the legislative, once you look at the text of the statute and the legislative history, if the intent of Congress on a specific point is clear, that's the end of the inquiry. No, but my question was, if you don't look at the legislative history, and you just look at the statute, would that? No, the answer to your question is no, Your Honor. That's not the end of the inquiry, because what the agency did, by creating these three reduced base payments based on tier, they actually legislated the difference between the amount of payment between contractors of different tiers. Congress said, we are going to set a base payment, and then for a Tier 1 contractor, he shall get 5% of it, Tier 2, 10%, Tier 3, 15%. The ratio was going to be 1, 2, to 3. So, through the mathematical machinations of the agency in the regulations, the ratio turned out to be 1 to 4 to 9. Essentially, a Tier 3 contractor, a larger, more established contractor, is going to get, under the government's regulations, they're going to get 9 times more than a Tier 1 contractor. Congress didn't want that. Congress only wanted the ratio to be three times larger. What the agency has done here is effectively legislated how the money for adjusted base payments were to be distributed. They skewed, by these regulations, they skewed the amounts that the larger, more established contractors were going to get. It was far different than what contracts had contemplated. Is there any other mechanism that you're aware of in which you could have challenged the validity of the regulation? I suppose, Your Honor, that an ADA procedure of some sort could have... If that's your view, if that's your position, that the regulations were completely outside the scope of what was required by the statute, why isn't that the appropriate vehicle as opposed to agreeing to incorporate the regulations in a contract and then coming in saying the contract should be rewritten? Because I think the cases of this Court also provide the remedy of taking the contract and saying that it was inappropriate. We've pointed to the cases involving beta systems, the surplus shipped sale cases, Art Center, and they all provide a contract remedy in addition to the possibility of bringing an ADA proceeding. Remember, we're talking about a small contract for just outside Stanton, Virginia, to be bringing an ADA procedure on behalf of 20,000 farmers like him. The only vehicle really that would permit that to occur would be a class action, and that's the route that Mr. Ehrman was forced to choose. Why don't we hear from the government? May it please the Court. The Court of Federal Claims correctly held that the government did not breach any express provision within Mr. Ehrman's contract. In fact, the government met all of its obligations to Mr. Ehrman. In addition, the trial court correctly held that the CSP statute, neither its base payment provision nor its renewal provision, was incorporated into Mr. Ehrman's contract. Your Honor, his contract interpretation begins with the plain language of the contract, and there is no dispute in this case that Mr. Ehrman was paid the exact amount that he was entitled to under his contract. Leaving aside the merits of the underlying claim, you seem to concede in your briefing that this statute is incorporated into the contract, or at least that the government is required to comply with the statute, right? Your Honor, we recognize that the government is required to comply with the statute. However, after reviewing the trial court's opinion, we recognize that the trial court got the statement of the law correct, and the government... Well, is there a meaningful distinction between being legally required to comply with the statute and the compliance being enforceable through a breach of contract claim? There is, Your Honor. In general terms, agencies are limited to the authority that's bestowed upon them by Congress, but it's much different in the contractual context. And with the exception of cases where a statute requires payment of a precise amount, such as the surplus naval ships, or the Art Center case, or the Glavie case, this court has been reluctant, and looking specifically at the St. Christopher case, to read statutes into a contract where they're not specifically incorporated by reference, which wasn't the case here. So what other vehicle, what other ability would someone in Mr. Ehrman's situation, if he at least believed that the regulations were improper or not in compliance with the statute, to pursue that? Well, as Your Honor said earlier, Mr. Ehrman or another producer could have brought a challenge under the APA. In fact, he didn't do so. He brought his challenge under the context of the contract. But I would also note that the agency in this case didn't violate the CSP statute. There's no allegation that Mr. Ehrman has shown that the agency violated either the base payment provision or the renewal provision in the contract. Well, he makes an argument, and his argument seems to be at least largely dependent or relying on the legislative history, right? Correct. The legislative history does call into question some of the stuff that's incorporated in the regulation, does it not? It does. It arguably does. So do we, are we, is it just on the principle of reading the statute? Statute is clear. You have authority under the regs. Ignore the legislative history. Is that how we get to where you want us to go? Well, I think that you need to look. You look at the statutory language, and the statutory language is clear. The Secretary has broad discretion to set base payment limits. And if you look at other parts of the same CSP statute, for example, 16 U.S.C. Section 3838Cb2, it's clear that Congress knew how to set payment limits because it did so in that provision. It set the maximum annual payment that a contractor could receive. And it also set the maximum annual base payment percentage that it could receive in a given year. So these contracts, they have three payment components. There's the base payment, there's the cost share payment, and then there's the enhancement payment. And Congress was clear that only a certain percentage of the total payment could be the base payment. And notably, they did not put any limitation into the base payment provision. There, they gave the Secretary broad discretion. And the courts have been clear that courts assume that Congress met what it says and says what it means. And that's what they did here in the statute. So there's no need under the canons of statutory interpretation to look at the legislation. In this case, Congress identified the formula that's to be used in order to set the base payment. In the Glaby case, where Congress articulated the express amount that's supposed to be paid to inspectors of foreign vessels, how is this unlike Glaby, where you have an express, you have a provision that expressly sets the formula to be used versus a dollar amount that's supposed to be paid to these ship inspectors? Well, Your Honor, I think if you look at the statutory text, and it's at AD 61 of the appendix in this case, I would respectfully disagree that the statute provides any sort of precise formula for calculating base payments. What the provision provides is that a base payment shall be, as determined by the Secretary, the average national per acre rental rate for a specific land use during the 2001 crop year, or another appropriate rate for the 2001 crop year that ensures regional equity. But it said ratio. The statute defines a ratio that's supposed to be applied, and a ratio is fixed. It seems to me that your opponent's arguing what the regulation does, it changes the ratio. Your Honor, the regulation doesn't change the ratio. What the regulation does is it provides a methodology for calculating the base payment amount, and then what the Natural Resources Conservation Service did in this case was take the amount that they calculated, the base payment amount, and then apply the statutory ratios, which are set forth in the statute for the Tier 1 contract, Tier 2, and Tier 3. Your Honor, with regard to, Mr. Ehrman also argues that the Christian doctrine applies to his renewal claim, that under this court's precedent, through cases regarding the Christian doctrine, that the renewal provision should be read into his contract by operation of law. And that's simply incorrect. The Christian doctrine applies to mandatory contract clauses that express a significant or deeply ingrained strand of public procurement policy. And there's no dispute in this case that this is a financial assistance contract. It's not a... But with respect to the renewal provision, he's got other problems, right? I mean, with respect to the renewal provision, he's got the provision in the contract, Section 10, and another provision that kind of override that. Correct, Your Honor. And we would just point out that the CFP statute is in the 2002 Farm Bill, and the Farm Bill is enacted for a five-year period. So all producers were on notice that the law was going to change. In this case, Congress rescinded the statute, but that's what happens every five or so years, so that they knew that that was going to happen. Is this program now non-existent, or has it just been revised? It's essentially non-existent. What the 2008 Farm Bill provided was that the agency had the authority to honor its obligations under existing contracts, but no new contracts can be entered into or renewed. Does our decision in this case affect every contract that's been entered into in this program? Yes, Your Honor. I think that it does. Are there other cases pending that raise the same issue? No, Your Honor. Mr. Ehrman, at the trial court, he had alleged the class action, but the court didn't reach his class action claim because the court dismissed all of Mr. Ehrman's allegations. I would just also note in Mr. Ehrman's reply brief, he asserts that the government has judicially stopped from arguing that the statute is not incorporated into Mr. Ehrman's contract, and just point out that that argument ignores the fact that the doctrine of judicial estoppel only applies in cases where a party successfully urged a petition below, You did concede, though, that there's incorporation. We did, Your Honor. And your position is that it doesn't really, that issue is dispositive here because even if we construe the statute to be incorporated, you prevail because of the way you interpret the statute, right? Correct, Your Honor. Even if, in this case, the court decided to incorporate the base payment provision and the renewal provision, on their faith, the government did not violate either of those provisions. And we also argue in the alternative in our brief, that the regulation that Mr. Ehrman argues is invalid is in fact entitled to deference under Chevron, and it's a reasonable. Does it matter if the incorporation of the statute, not the regulation, but of the statute is expressed or implied? I'm sorry, Your Honor, I didn't understand your question. Does it matter  of the statute into the terms of the contract is an expressed incorporation or an implied incorporation? It does, Your Honor. As this Court said in St. Christopher, there is simply no Federal Circuit precedent holding that it is proper to read into a contract, statutes, regulations, or agency guidance when they are not incorporated explicitly by reference into the contract. And that's consistent with this Court's holding in the Smithson case as well as the Northrop Grumman case. So is your argument that at most we have an implied incorporation? Well, you conceded incorporation, so I guess that leaves you with an implied incorporation. We conceded incorporation at the trial court and now recognize that that was an incorrect concession and that the trial court got it right, that there was no incorporation. We no longer concede that the statute was incorporated. You're playing both sides of the fence here, aren't you? And you're arguing something below and now you were wrong or at least the court didn't agree with you and now you're arguing the opposite to us. We're arguing the opposite to you, but also noting our earlier argument that even if this court were to find that the statute, that the CSB statute was incorporated by implication into Mr. Ehrman's contract, that Mr. Ehrman still doesn't succeed on his claim because the agency paid him what was provided for in his contract, which was consistent with the CSP statute, the base payment provision. And similarly, Mr. Ehrman did not, under the plain meaning of the statute, have a unilateral right to renew his contract. Does your position here depend on a rigorous interpretation and application of that St. Christopher statement? No, Your Honor. If I understand your question correctly, are you asking? It's a difficult statement, applicable in that case, undoubtedly, but one can argue on the principles of statutory relationships. And so that's really my question. Are you relying on the absence of federal circuit precedent of contract interpretation that might be specific to government contracts and perhaps nothing else? No, Your Honor. In the Northrop Grumman case, this court did something of a survey of the precedent in other circuits, noting that there wasn't very much law on incorporation in the federal circuit. And the court's decision in Northrop Grumman, as well as in Christopher, is consistent with the principle of statutory interpretation that a document, whatever it is, a statute or regulation is not incorporated into a contract unless it's done clearly, unambiguously and explicitly. It doesn't matter, your view is, but your position is, but it doesn't matter in this case because whether or not the statute were incorporated or not, the result would be the same because you don't think that the statute supports Mr. Earley's argument, correct? That's correct, but the government's position is that the St. Christopher precedent and the similar cases are the correct statement of law. Unless your honors have any further questions, there's a government respectfully request that the court affirms the trial court's decision. Very briefly, your honor. Yeah, I think you've got maybe a couple minutes left. I think you went into your rebuttal, so I think you've got way down to two or three minutes. Thank you, your honor. The government spoke about the Northrop Grumman case, as we said in our brief. That case stands nothing more than, if there is an incorporation, by reference, it must be specific. The government briefly spoke about the Christian doctrine. Long before Christian ever came about, this court found, or its predecessor found, that in cases such as Eastern Building, that there can be an incorporation. There, there was a proviso that said, if a government building becomes available for a post office, the lease in question would be terminated. It was not in the lease. The predecessor court had no problem in reading that into the contract. The, the, there are two steps here. The legislative history that we talked about affected only the calculation of the base payment. That said, there should be a minimum, the 2001 average national rental rates. There's no reference in the legislative history to the ratios or the percentages to be applied to that base payment. The agency tinkered with the 5%, 10%, and 15% set forth in the statute by applying an additional reduction factor. They did not follow what Congress said. They came up with different, a different formula. They, the agency, as an executive agency, does not have the power to thumb their nose at Congress in such a fashion. Thank you, Your Honors. Thank you, counsel. The case is submitted.